IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| BEHAVIORAL MEDICINE CONSULTING, LLC, A Montana limited liability company; and KEITH BROWN, M.D., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CHG COMPANIES, INC., dba COMPHEALTH, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT**<br><br>Case No. 2:19-cv-00967 JNP<br><br>Judge Jill N. Parrish |

This case arises under a Physician Services Agreement ("PSA") between Defendant CompHealth, a medical staffing company, and Plaintiff Behavioral Medicine Consulting, LLC ("Behavioral Medicine"), whose sole member is Plaintiff Keith Brown, M.D. ("Brown"), a licensed psychiatrist. Under the PSA, Brown agreed to furnish temporary physician services to CompHealth's hospital clients as an independent contractor.

Section 4.1 of the PSA states that "CompHealth may immediately cancel this Agreement or any Assignment without notice or liability to Entity . . . upon CompHealth's reasonable determination that Doctor is not insurable under CompHealth's malpractice policy and/or does not meet Comp Health credentialing standards." ECF No. 30-1 at 1. Section 4.4 of the PSA further provides that "CompHealth may terminate [the PSA] or any Assignment," for any reason, "upon thirty (30) days' notice" to Behavioral Medicine. *Id.* § 4.4. If CompHealth chooses to terminate the PSA for any reason, CompHealth's maximum liability is the amount of compensation

Behavioral Medicine would have earned for the number of workdays scheduled between the date of cancellation and thirty days. *Id.*

CompHealth considered Brown for a prospective assignment to provide services to Western State Hospital in Lakewood, Washington ("WSH"), an inpatient psychiatric hospital and a CompHealth client. CompHealth offered Brown a temporary position and immediately informed him that it was still in the process of checking his credentials.

Upon evaluating his credentials, CompHealth determined that Brown did not qualify as an inpatient psychiatrist according to CompHealth's standards. Specifically, CompHealth determined that Brown had not worked at an "inpatient" psychiatric setting in the prior twenty-four months, and therefore, Brown would not be insurable under CompHealth's malpractice policy. Consequently, CompHealth cancelled Brown's assignment at WSH pursuant to the PSA terms. Plaintiffs filed suit against CompHealth, asserting claims, among others, for "Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing" and "Material Misrepresentation." ECF No. 30.

Relevant here, CompHealth filed a motion for summary judgment, arguing that it acted within its rights under the PSA to terminate Brown for not meeting CompHealth's credentialing requirements. On March 25, 2022, the court granted CompHealth's motion for summary judgment, finding that Plaintiffs presented "no facts from which a factfinder could determine that CompHealth acted unreasonably" in determining that Brown was not insurable and did not meet CompHealth's credentialing standards. ECF No. 55 at 6. In reaching this conclusion, the court noted Plaintiffs' reliance on their expert, Dr. Trent Holmberg, who opined that CompHealth's credentialing standard was unreasonable and unrealistic in the psychiatric profession. The court concluded that "Dr. Holmberg's opinion . . . largely questions the reasonableness of CompHealth's

underlying credential standard rather than the reasonableness of CompHealth's application of that standard to Brown's qualification." *Id*. The court further observed that "Plaintiffs failed to offer any evidence that CompHealth was acting under pretext or for an ulterior motive." *Id*. Rather, the court concluded that CompHealth had validly exercised its rights under the PSA, and therefore, granted summary judgment on Plaintiffs' breach of contract claim. The court also determined that Plaintiffs' claim that CompHealth had misrepresented that the WSH assignment was "a done deal" was directly contradicted by undisputed evidence that the credentialing process still had to occur after the PSA's execution. *Id*. at 14.

On April 20, 2022, Plaintiffs filed a Motion to Alter or Amend Judgment (ECF No. 61), arguing that the court made four critical errors in its analysis and evaluation of the facts. Plaintiffs request that the court reconsider its prior summary judgment order.

## LEGAL STANDARD

"The purpose of a Rule 59(e) motion" is limited to "correct[ing] manifest errors of law" or "present[ing] newly discovered evidence." *Monge v. RG Petro-Machinery (Grp.) Co. Ltd.*, 701 F.3d 598, 611 (10th Cir. 2012). Specific grounds for granting the motion include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.*

Rule 59(e) motions "may not be used to relitigate old matters [] or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (quotation omitted). Moreover, a Rule 59(e) motion that is premised on a putative error in the court's previous rulings should be denied if correction of the error would not affect the outcome of the case. *See* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (3d ed.) ('[A]mendment of the judgment will be denied

if it would serve no useful purpose."). In view of the "strong interest in protecting the finality of judgment," *Nelson*, 921 F.3d at 929, a Rule 59(e) motion should not be granted absent "exceptional circumstances." *MacArthur v. San Juan Cty.*, 416 F. Supp.2d 1098, 1208 (D. Utah 2005).

## ANALYSIS

Here, Plaintiffs do not contend that there has been an intervening change in the controlling law or that previously unavailable evidence has surfaced since the court issued its order granting summary judgment. Rather, Plaintiffs assert that the court erred in four ways. The court considers each allegation in turn.

### I. The court's application of Sections 4.1 and 4.4 of the PSA.

Plaintiffs argue that the court "misstated the terms of Sections 4.1 and 4.4 in the PSA."[1] ECF No. 61 at 6. Plaintiffs contend that the second sentence of Section 4.4, which limits liability to thirty days recovery, cannot apply to Plaintiffs because CompHealth terminated the contract under section 4.1, which, Plaintiffs contend, has no contractual limit on compensation. In other words, Plaintiffs want the court to read each section of the contract in isolation.

The court is unpersuaded by Plaintiffs' argument. The PSA's terms are unambiguous, and CompHealth was permitted to cancel assignments pursuant to *both* sections 4.1 and 4.4 of the PSA. First, section 4.1 clearly provides that "CompHealth may immediately cancel" the PSA "*without liability*" to Brown if he was "not insurable under CompHealth's malpractice policy and/or does not meet CompHealth credentialing standards." ECF No. 30 § 4.1(f) (emphasis added). CompHealth availed itself of this provision when it immediately terminated the PSA upon discovering that Brown did not satisfy CompHealth's credentialing standards.

---

[1] The court notes that the Order quotes the contracts verbatim. ECF No. 55 at 2.

Second, the first sentence of Section 4.4 permits CompHealth to cancel for any reason whatsoever, upon provision of thirty days' notice. *Id.* § 4.4. The second sentence provides that CompHealth is liable for compensating a contractor if CompHealth terminates the contract for a reason not enumerated in section 4.1 and does not provide the contractor with notice, thirty days prior to termination. In this scenario, CompHealth is liable for compensating the contractor for the number of days remaining after the time from the notification date to the cancellation date is subtracted from the thirty day period. *Id*. Despite being sequential sentences in the same enumerated paragraph of the contract, Plaintiffs ask the court to read the two sentences as distinct provisions and thus not impose a damages cap on section 4.1.

Plaintiffs' interpretation of the contract ignores the PSA's plain terms and the court must therefore deny Plaintiffs' request. In interpreting the unambiguous contract, the court must give each term its natural meaning. Plaintiffs' proposed interpretation of section 4.4 simply cannot be squared with the explicit language of section 4.1, which unequivocally states that CompHealth may cancel "without liability." *Id*. § 4.1. This damages cap on the face of the contract squarely applies to section 4.1. Plaintiffs' attempt to read section 4.1 without a contractual limitation on damages, based on section 4.4's first sentence, is contrary to the express terms of the contract.

## II.  Plaintiffs presented no evidence that CompHealth unreasonably applied its credentialing standards.

Plaintiffs next argue that the Court erred in concluding that Plaintiffs failed to adduce evidence from which a factfinder could find that CompHealth unreasonably determined that Brown did not meet its credentialing standards. Specifically, Plaintiffs assert that the court erred in finding that Dr. Holmberg's opinion "largely questions the reasonableness of CompHealth's underlying credential standard rather than the reasonableness of CompHealth's application of that standard to Brown's qualifications." ECF No. 55 at 6. In support, Plaintiffs cite evidence that they

claim shows Brown held four positions involving inpatient experience that CompHealth did not credit. ECF No. 61 at 4.

Preliminarily, the court notes that Plaintiffs did not cite to this evidence in their summary judgment briefing and briefly mentioned it for the first time, without citation, during oral argument. Plaintiffs chose to use their briefing to argue that CompHealth's credentialing process was unreasonable, *see* ECF No. 43 at 9-10, 18, and 27, or to criticize CompHealth's introduction of Brown to WSH before the credentialing process was complete. *See id.* at 11, 17. Plaintiffs' failure to point to the four contracts in their summary judgment briefing did not sufficiently alert the court to the argument that they now raise, and the court did not clearly err by refusing to develop Plaintiffs' argument for them. *See Cribari v. Allstate Fire & Cas. Ins. Co.*, 861 F. App'x 693, 707-08 (10th Cir. 2021) (noting that a district court's failure to rule on an issue that was "mere[ly] mention[ed] in the district court oral argument" is "no surprise").

In short, Plaintiffs' summary judgment briefing did not cite the evidence that Plaintiffs now attempt to raise in their arguments concerning Brown's four prior positions. Plaintiffs' citation to new portions of Dr. Holmberg's report and testimony to support their argument in the current motion is similarly inappropriate. Belated reliance on this evidence provides no basis for Rule 59(e) relief, and the court did not clearly err by declining to parse through the record on Plaintiffs' behalf. *See Doe v. Univ. of Denver,* 952 F.3d 1182, 1191 (10th Cir. 2020) (finding that "the district court is under no obligation to parse through the record to find the uncited materials") (quotation omitted).

### III. The court's observation that Plaintiffs failed to adduce evidence of pretext or ulterior motive is no basis for Rule 59(e) relief.

Plaintiffs next argue that the court "misapprehended the law" by "requir[ing] Plaintiffs to show CompHealth acted under a pretext or with an ulterior motive" in contravention of the law

governing claims for breach of the implied covenants of good faith and fair dealing. ECF No. 61 at 9. Plaintiffs urge that such a requirement is not mandated by any law or precedent, and it is improper for the court to impose such a requirement now.

The court agrees with Plaintiffs: Plaintiffs are not required to adduce evidence of pretext to survive summary judgment. But the court did not suggest as much in its opinion. Rather, when the entirety of the paragraph from which Plaintiffs' excerpt is considered, it becomes clear that the court was merely observing that CompHealth had everything to gain in placing Brown with WSH. CompHealth acted in its standard course of business, and that business included terminating the PSA when Brown could not be credentialed. The thrust of the paragraph is that "no reasonable fact finder could find in Plaintiffs' favor." This observation does not amount to a ruling that Plaintiffs were required to adduce evidence of pretext in order to survive summary judgment.[2]

### IV. CompHealth could cancel assignments after the execution of the PSA due to credentialing requirements.

Plaintiffs' final argument is that the court erred in concluding that the "PSA openly states that even after signing, CompHealth could cancel" the WSH assignment if it reasonably determined that Brown did not meet CompHealth's credentialing standards. ECF No. 61 at 9. Plaintiffs' summary judgment briefing presented similar arguments in support of their misrepresentation claim, *see* ECF No. 43 at 34-35, and the court rejected them. Plaintiffs may not use Rule 59(e) to relitigate an issue decided by the court after thorough briefing. *Nelson v. City of Albuquerque*, 921 F.3d at 929 (quotation omitted).

---

[2] Moreover, the court notes that even had the court erred and required Plaintiffs to prove that CompHealth acted pretextually, which it did not, the correction of the error would not rescue the breach of contract claim. The court determined – regardless of pretext or ulterior motive – that Plaintiffs had failed to present evidence from which a factfinder could find that CompHealth's credentialing decision was unreasonable. Granting summary judgment was therefore proper.

And even if the court were to re-consider Plaintiffs' argument, the court would still reach the same conclusion. The PSA unambiguously permits CompHealth to cancel Brown's assignment upon reasonably determining that he did not meet its credentialing standards. *See* ECF No. 30 § 4.1(f)(3). To find otherwise would render section 4.1(f)(3) meaningless: CompHealth would never have the right to cancel the contract, a result in contravention of the express terms of section 4.1(f)(3).[3] These are the terms that Plaintiffs and CompHealth negotiated and bargained for, and the court will not render a contract's term meaningless just because Plaintiffs are no longer happy with their bargain. *See Green River Canal Co. v. Thayn*, 84 P.3d 1134, 1145 (Utah 2003) (contract should be interpreted to "give effect to all of [its] provisions"). The court rejects Plaintiffs' attempt to render section 4.1(f)(3) superfluous. Brown's view that "it was a done deal" does not override the express terms of the contract he signed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Alter or Amend Judgment is DENIED.

DATED this 24th day of March, 2023.

Jill N. Parrish
United States District Court Judge

---

[3] Indeed, the evidence demonstrates that Brown knew the credentialing process did not begin until after he had signed the PSA. CompHealth explicitly told Brown after he signed the PSA that CompHealth would now "start the credentialing process," ECF No. 47 at 7, and Brown did not object. Brown did not express *any* concerns with the fact that the credentialing process was just beginning at that point. In the days that followed, Brown received additional emails advising him that the credentialing process was ongoing and requesting more information. *See id*. Plaintiffs' post hoc argument that CompHealth should have begun the credentialing process sooner rings hollow and is not supported by the contract itself. The parties simply did not bargain for this term and the court will not now unilaterally impose a new contract term on the parties. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1152 (10th Cir. 2000) (holding that "[t]he court's duty is to interpret and enforce contracts as written between the parties, not to rewrite or restructure them.") (quotation omitted).